# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| In Re | |
| JACK O. LOADER, | **Bankruptcy Case No. 08-00387-JDP** |
| **Debtor.** | |

_____

| | |
|---|---|
| LORI WOOD, | |
| **Plaintiff,** | |
| vs. | **Adv. Proceeding No. 09-6004** |
| JACK O. LOADER, | |
| **Defendant.** | |

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

Jon M. Steele, RUNFT & STEELE, Boise, Idaho, Attorney for Plaintiff.

D. Blair Clark, LAW OFFICES OF D. BLAIR CLARK, Boise, Idaho, Attorney for Defendant.

MEMORANDUM OF DECISION - 1

*Introduction*

On March 5, 2008, Defendant Jack Loader ("Loader") filed a petition for relief under chapter 7 of the Bankruptcy Code.[1]  Plaintiff Lori Wood ("Wood") filed a proof of claim in the bankruptcy case for $223,209.68 based upon a state court money judgment she holds against Loader.[2]  Wood then initiated this adversary proceeding in which she alleges that the debt upon which her claim is based should be excepted from Loader's discharge.

A trial[3] in the adversary proceeding was conducted on August 20, 2009, at which the parties offered documentary evidence, witness testimony, and made legal arguments.  At the conclusion of the trial, the

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

[2]  Over the objection of the chapter 7 trustee, the Court determined Wood's claim was entitled to priority under § 507(a)(10).  *See* Memorandum of Decision, Docket No. 45, Bankr. Case No. 08-00387-JDP.

[3]  Wood moved for summary judgment, but the Court decided that genuine issues of material fact existed, and that motion was denied.  *See* Order Denying Summary Judgment, Docket No. 18.

MEMORANDUM OF DECISION - 2

Court took the issues under advisement.  Having reviewed the evidence

and record, the arguments of the parties, and the applicable law, the Court

concludes that Loader's debt to Wood is not excepted from discharge.[4]

### *Facts*[5]

On July 24, 2004, Loader was hosting a barbeque at his home in

Boise, Idaho.  His friends, Al Ojeda and Roger Browning were in

attendance, along with several of Loader's family members.  Ojeda also

brought his two-year old son with him to the barbeque.  At some point in

the early afternoon, Loader decided to visit his adult son, Scott, who lived

nearby.  Loader had been drinking that afternoon, so he asked Ojeda, who

had not been drinking, to drive him in Loader's truck to Scott's residence.

---

[4]  This Memorandum sets forth the Court's findings of fact, conclusions of law and reasons for its decision.  Rule 7052.

[5]  Some of the facts in this action were uncontested; many more were disputed by the parties.  In making its findings, the Court has carefully considered the testimony of the various witnesses, and in some instances based upon its opportunity to observe the witnesses testify either in person or via video deposition, the Court has assessed their credibility.  Since the testimony of witnesses was in some instances inconsistent with other evidence presented, the Court's findings reflect its judgment concerning the relative weight assigned to that testimony.

MEMORANDUM OF DECISION - 3

Ojeda drove; Loader, Browning, and Ojeda's son were all passengers.

Scott's house was located adjacent to the apartment complex where Wood resides. After visiting with Scott for a short while, Loader and his friends decided to return to the barbeque at Loader's residence. They got into Loader's truck, with Ojeda in the driver's seat, Loader in the front passenger's seat, and Browning and Ojeda's son both sitting in the back seat. Instead of leaving the parking lot via the same route they entered, Ojeda decided to drive beside Wood's apartment building and exit through an alleyway. In order to do so, Ojeda needed to drive the truck over a large log pole which was lying in front of the truck, and which was being used as a parking barricade to separate the apartment complex from the parking lot.

Wood and several others were standing in or near the parking lot at the time, and were watching as these events unfolded. Several of these people encouraged Ojeda to drive over the log. Loader told Ojeda that he could do so if he so desired.

On his first attempt, Ojeda approached the log with the truck slowly

MEMORANDUM OF DECISION - 4

and attempted to drive up and over it.  However, the tires of the pickup

lost traction, and he was unable to drive over the log.  Ojeda then backed

the truck up a short distance from the log, apparently, to ponder his course

of action.

At that point, from his position in the front passenger seat, Loader

reached down and shifted the vehicle into four-wheel drive, while at the

same time proclaiming loudly:  "F- - - this, go ahead and go over it!"  Ex.

11, p. 89.[6]  Ojeda immediately accelerated the truck in a second attempt to

---

[6] Loader testified at trial.  He denied shifting the vehicle into four-wheel
drive and making this statement to Ojeda.  However, his testimony at trial varied
sharply from his earlier testimony in state court, and in his deposition.  In his
deposition, Loader declared that it was Ojeda who put the vehicle into four-
wheel drive.  Ex. 10, p. 54.  However, during the state court trial, he testified that
he could not recall who actually shifted the truck into four-wheel drive, nor
could he recall making any statements to Ojeda.  Ex. 25, pp. 47-48.  In essence,
although under oath, Loader has therefore given three different accounts of the
incident at various stages in these proceedings.  It is undisputed that by this time,
Loader had already consumed several drinks.  The disparity in his testimony,
and the fact that he may have been influenced by the alcohol, has persuaded the
Court to assign little weight to Loader's denials at trial, or to his other accounts of
the facts.  In short, the Court finds Loader's testimony on these important points
not credible.

Ojeda, on the other hand, did not testify at this trial.  Even so, his state
court deposition was also admitted into evidence.  In that deposition, Ojeda
testified several times that Loader made that statement to him, however, he gave
conflicting testimony regarding who shifted the truck into four wheel drive.  At

MEMORANDUM OF DECISION - 5

get over the log.  This time, when the front wheels of the truck struck the

log, the log was dislodged from the ground and pivoted around the truck

until it struck Wood, who was standing nearby, in the leg.  Wood was

knocked to the ground and her leg was pinned underneath the log.

Loader and Ojeda went to her side to assist, and found that she was

seriously injured.  Wood was transported to the hospital by ambulance,

where she underwent surgery on her ankle.  Wood spent several days in

the hospital recovering, incurring significant medical expenses.

Wood sued both Ojeda and Loader in state court to recover

compensatory and punitive damages on account of her injuries.  In

January, 2008, the parties participated in a four-day trial.  At the

conclusion of the evidence and argument, the state court instructed the

jury that while Ojeda and Loader had admitted to being negligent, the jury

---

one point, he stated that he locked the truck into four-wheel drive for the second
attempt at the log.  *See* Ex. 11, at p. 53.  Later in the deposition, though, he
testified that "I honestly believe Jack [Loader] actually shifted it into four-wheel
drive."  *Id*. at p. 91.

All things considered, the Court finds Loader both shifted the truck, and
by his statement, urged Ojeda to drive over the log.

MEMORANDUM OF DECISION - 6

must decide whether their negligence was the proximate cause of Wood's injuries. *See* Jury Instruction No. 8, Docket No. 22. The jury was further asked to determine whether Wood was also negligent, and, if so, whether her own negligence was also a proximate cause of her injuries. *See* Jury Instruction No. 10, Docket No. 22. Responding to the questions on the special verdict form, the jury found both Ojeda and Wood to be negligent in causing Wood's injuries; it apportioned 95% of the fault to Ojeda, and 5% to Wood. Ex. 20. The jury found Wood's economic and non-economic damages to be $34,000 and $170,000, respectively. *Id.*

The jury was also instructed by the state court regarding Wood's claim for punitive damages. Again responding to the questions on the special verdict form, the jury found the conduct of Loader and Ojeda to have been "outrageous" and that Loader and Ojeda were "acting in concert" in causing the accident. *Id.* The jury awarded Wood punitive damages of $50,000 against Loader, and $180,000 against Ojeda. *Id.*

Shortly after the jury verdict was rendered, as noted above, Loader filed his chapter 7 bankruptcy petition. In his Statement of Financial

MEMORANDUM OF DECISION - 7

Affairs, Loader disclosed the pending state court action against him.

Loader apparently did not list Wood as a creditor in his schedules, and she

did not receive notice from the Clerk regarding the bankruptcy filing.

On December 18, 2008, a judgment was entered by the state court

against Loader and Ojeda. Ex. 21. In it, Loader and Ojeda were adjudged

jointly and severally liable to Wood in the amount of $167,784.48, and

individually liable to Wood for $55,425.20 and $199,529.40, respectively.

*Id.* On January 13, 2009, Wood filed the complaint commencing this

adversary proceeding asking the Court to determine that her claim against

Loader is excepted from discharge in the bankruptcy case.[7]

---

[7] In her complaint, Wood alleged that the judgment debt should be
excepted from Loader's discharge under § 523(a)(6) as a debt for willful and
malicious injury to Wood. Complaint at ¶ VIII, Docket No. 1. However, she also
contended that the debt should be excepted from discharge pursuant to
§ 507(a)(10). *Id.* at ¶ XI. Of course, § 507(a)(10) is a priority provision, not a
discharge exception. It appears that Wood intended to rely upon § 523(a)(9), as
opposed to § 507(a)(10), as an additional basis to support her claim of
nondischargeability. Wood did not reference § 507(a)(10) at any other point in this
adversary proceeding. In her motion for summary judgment and at trial, Wood
argued that this debt should be excepted from discharge under §§ 523(a)(6) and
(a)(9).

Loader has not objected to Wood's arguments based upon § 523(a)(9) as
beyond the scope of the complaint, and Wood has not asked that her complaint
be amended to conform to the evidence. *See* Fed. R. Civ. P. 15(b)(2), incorporated

MEMORANDUM OF DECISION - 8

*Discussion*

The volatile combination of a powerful motor vehicle[8] and alcohol at a summer barbeque has resulted in five years of protracted, expensive litigation in state and federal courts.  In the state court, a jury found that Loader's conduct was sufficiently outrageous to warrant an award of punitive damages against him.  Now, this Court must determine whether Loader's conduct also satisfies the standards established by Congress to justify excepting his debt to Wood from discharge.  A creditor that alleges

---

by Rule 7015 (providing that a "party may move  – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue").  However, it does not appear that Loader was surprised by Wood's arguments regarding § 523(a)(9).  Indeed, Loader has never objected to the omission of this Code section from Wood's complaint, and his counsel offered arguments pertaining to this provision both the hearing on the motion for summary judgment and at trial.  Given the record, the Court deems the § 523(a)(9) claim to have been tried by the consent of parties, and the Court will therefore consider whether this debt should be excepted from discharge under either §§ 523(a)(6) or (a)(9).

Wood also cited § 523(a)(2) in her complaint, however, Wood has never argued this theory applied under these facts.  The Court considers any claim by Wood under this Code section to have been abandoned by Wood.

[8]  Assuming a picture can indeed be worth a thousand words, and to give additional context and flavor to this discussion, a photo of the subject truck, admitted in evidence in this action, is appended to this decision.

MEMORANDUM OF DECISION - 9

that a particular debt should be excepted from discharge under § 523(a)

has the burden of proving the elements of each provision by a

preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

I.

Section 523(a)(6) of the Bankruptcy Code provides that an

individual debtor may not discharge any debt "for willful and malicious

injury by the debtor to another entity or to the property of another entity."

11 U.S.C. § 523(a)(6).  The requirement that the debtor's conduct in

inflicting an injury on another was willful is separate and distinct from the

requirement that the debtor's actions were malicious.  *See Barboza v. New

Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008).  Willfulness

requires a "deliberate or intentional injury, not merely a deliberate or

intentional act that leads to injury."  *Kwaauhau v. Geiger*, 523 U.S. 57, 61

(1998); *Ditto v. McCurdy*, 510 F.3d 1070 (9th Cir. 2007).  "A 'malicious'

injury involves '(1) a wrongful act, (2) done intentionally, (3) which

necessarily causes injury, and (4) is done without just cause or excuse.'"

*Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146-47 (quoting *Petrolia v. Jercich (In*

MEMORANDUM OF DECISION - 10

*re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001)).

### A.    Willfulness

This Court has previously explained that "[t]o be considered willful, the debtor must commit an act akin to an intentional tort under state law, and the debtor must intend the consequences or injury resulting from the act rather than just the act itself." *Farmers & Merchants State Bank v. Cracchiolo (In re Cracchiolo)*, 00.2 I.B.C.R. 84, 87 (Bankr. D. Idaho 2000) (citing *Geiger*, 523 U.S. 57, 61-62 (1998)).  To satisfy the statutory standard, the debtor's act must be more than reckless or negligent.  *Id*. at 87.

Loader admits that his conduct that contributed to the cause of Wood's injuries was negligent, and concedes that the state court jury found that his conduct was reckless.  He insists, however, that the jury's findings stopped short of the higher standard required for this Court to declare the debt nondischargeable under § 523(a)(6), and that the evidence submitted at trial does not prove he acted willfully.

In making this argument, Loader seizes upon two jury instructions which were given in the state court action.  First, the jury was instructed

MEMORANDUM OF DECISION - 11

that Loader and Ojeda "were acting in concert if they pursued a common

plan which resulted in the commission of a *reckless act*."  Jury Instruction

No. 15, Ex. 22 (emphasis added).  Secondly, the jury was told:

> The words [sic] "reckless" when used in these
> instructions and when applied to the allegations in this case,
> mean more than ordinary negligence.  The word means
> actions taken under circumstances where the actor knew or
> should have known that the actions not only created an
> unreasonable risk of harm to another, but involved a high
> degree of probability that such harm would actually result.

Jury Instruction No. 16, Ex. 22.  Relying upon these two instructions,

Loader argues that the only issue the state court jury was required to

consider was whether Loader's conduct was reckless, and that is all the

jury actually found.  The Court respectfully disagrees.

Although the special verdict form which the jury completed does

not contain a question specifically asking whether Loader's conduct was

reckless, it is clear that the jury concluded that his conduct was *at least*

reckless.  The jury found that Loader and Ojeda were "acting in concert,"

which necessarily meant, according to the jury instructions, that they

committed a reckless act.  However, the jury's findings did not end there,

MEMORANDUM OF DECISION - 12

as Loader posits, because it also found that Loader's conduct was

outrageous and justified the award of punitive damages.  *See* Ex. 20.

Loader dismisses the finding of outrageousness and the award of

punitive damages, arguing that for the state court jury to award punitive

damages, all it needed to find was that Loader's conduct was *either* willful,

malicious, intentional, *or* reckless.  Loader notes that the because the

standard is framed in the disjunctive, this Court can not know whether the

jury's decision to award punitive damages was because Loader's conduct

was willful, or merely reckless.  However, Loader's formulation of the

standard for punitive damages is incorrect.  As the state district judge

noted, "[i]n any action seeking recovery of punitive damages, the claimant

must prove, by clear and convincing evidence, *oppressive, fraudulent,*

*malicious or outrageous* conduct by the party against whom the claim for

punitive damages is asserted."  Memorandum of Decision, Ex. 19 (citing

Idaho Code § 6-1604(1) (emphasis added)).  Reckless conduct is markedly

absent from this standard.

The instruction the jury received regarding punitive damages was

MEMORANDUM OF DECISION - 13

consistent with this standard.  The jury was instructed:

> If [Wood] proves by clear and convincing evidence that
> [Ojeda's and Loader's] acts which proximately caused injury
> to [Wood] were an extreme deviation from reasonable
> standards of conduct and that these acts were outrageous, you
> may, in addition to any compensatory damages to which you
> feel [Wood is] entitled, award to [Wood] an amount which
> will punish [Ojeda and Loader] and deter [them] and others
> from engaging in similar conduct in the future.

Jury Instruction No. 17, Ex. 22.  In short, Loader's assertion that all the jury

needed to find in order to award punitive damages against him was that

he acted recklessly is simply incorrect.  To support their punitive award,

the jury necessarily found Loader engaged in more egregious conduct, as

evidenced by the special verdict form indicating that Loader's conduct

was outrageous.  *See* Ex. 20.

Returning then to the standard for a willful injury under § 523(a)(6),

it is clear that the jury determined that Loader's conduct was more than

simply negligent or reckless, overcoming one hurdle in the analysis.  Less

clear, however, is whether the jury determined that Loader actually acted

with the subjective intent to injure Wood.  Elaborating on the state of mind

MEMORANDUM OF DECISION - 14

required by § 523(a)(6), the Ninth Circuit has explained that the debtor

must possess a subjective motive to inflict injury, or believe that injury was

substantially certain to result from his conduct.  *In re Su*, 290 F.3d at 1142;

*see also Dominguez v. Elias (In re Elias)*, 302 B.R. 900, 907 (Bankr. D. Idaho

2003).  Highlighting the subjective nature of this analysis, in *In re Su*, the

court was careful to note that an objective test, which measures the

debtor's conduct against a so-called "reasonable person," expands the

scope of nondischargeable debt under § 523(a)(6) "far beyond what

Congress intended."  290 F.3d at 1145.

The award of punitive damages by the jury against Loader is not

helpful in this analysis.  While the jury's finding that such an award was

appropriate tends to show that Loader's conduct was more egregious than

ordinary negligence, it fails to shed any light on Loader's actual state of

mind.  Indeed, because the jury instruction pertaining to punitive damages

measures Loader's conduct against "reasonable standards of conduct," it

actually more closely resembles the objective test, which *In re Su* clearly

MEMORANDUM OF DECISION - 15

indicated was inappropriate in the § 523(a)(6) context.[9]

Even so, the jury instruction which the state court gave the jury regarding the definition of "reckless" is, in this context, intriguing.[10] Though cognizant of the Ninth Circuit's holdings regarding the relationship between "reckless" conduct and the objective standard, *see* 290 F.3d at 1145-46, this Court indicated to counsel during final arguments that it was hesitant to ascribe a talismanic power to a label.  The Court explained that if conduct which the state court defined as "reckless" for the jury is the same sort of conduct which the Ninth Circuit would describe as "willful and malicious," then the state court law label is of no moment.  Loader argued that the label used to describe the conduct is important, but he failed to articulate how the standard in the jury

---

[9]  In contrast, the Fifth Circuit has endorsed the use of an objective test. *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998) (holding that "either objective substantial certainty or subjective motive meets the Supreme Court's definition of 'willful . . . injury' in § 523(a)(6).")

[10]  Recall, Jury Instruction No. 16 provides:  the word reckless means "actions taken under circumstances where the actor knew or should have known that the actions not only created an unreasonable risk of harm to another, but involved a high degree of probability that such harm would actually result."  Ex. 22.

MEMORANDUM OF DECISION - 16

instruction differs from that announced in *In re Su*, namely that "the

debtor believes that injury is substantially certain to result from his own

conduct." *In re Su*, 290 F.3d at 1142. Upon careful examination, the Court

concludes there is a distinction between these two standards, albeit a

subtle one.

In *In re Su*, the debtor, driving a fourteen-passenger van in rush-

hour traffic in downtown San Francisco, "sped into [an] intersection

against a red light, traveling 37 miles per hour in a 25 mile-per-hour zone,

nearly five seconds after the light had turned red." 290 F.3d at 1141. The

debtor collided with one car, then ricocheted into a pedestrian, who was

severely injured. *Id*. The pedestrian obtained a state court money

judgment against the debtor after a jury found the debtor guilty of

negligence and malice. *Id*. The Ninth Circuit refused to conclude that the

state court judgment for damages entered against the debtor preclusively

established that the debt should be excepted from discharge under

§ 523(a)(6). It explained that while the debtor's maneuver carried with it a

high degree of risk of injury to others, it was nonetheless one which he

MEMORANDUM OF DECISION - 17

believed he could safely navigate. *Id.* at 1145-46 n. 4. In other words,

according to the Ninth Circuit, there is a qualitative difference between

substantial certainty and high probability.

Reading the special verdict form fairly, it can be assumed that the

jury found that, in attempting to drive over a large log in close proximity

to where others had congregated, Loader and Ojeda undertook a

calculated risk that something could go wrong. In this sense, Loader's

actions resemble those of the debtor in *In re Su*, where the driver obviously

placed pedestrians and other motorists in grave danger by speeding

through the busy intersection. However, the evidence and jury's verdict

has not shown that Loader subjectively intended to harm the spectators.

Indeed, as noted above, the jury's finding reveals nothing about Loader's

subjective intent. Moreover, the other evidence offered at trial fails to

persuade the Court to find that, while he was acting recklessly, Loader

was substantially certain his conduct would cause injury to others. Put

another way, while Loader and his cohort Ojeda acted foolishly, nothing in

this evidentiary record shows that Loader, by shifting the truck into four-

MEMORANDUM OF DECISION - 18

wheel drive and urging Ojeda to charge ahead,  intended to injure Wood
or anyone else.  Consequently, Wood has not shown that Loader possessed
the requisite subjective intent to have acted "willfully" for purposes of
§ 523(a)(6).

> B.   **Maliciousness**

In addition, Wood has not shown that the "malicious" prong of
§ 523(a)(6) is satisfied in this case.  In this regard, the state court jury
verdict likely establishes that Loader's conduct was wrongful, and that it
was done without just cause or excuse.  The verdict does not, though,
establish that Loader's actions would necessarily cause injury.  By
attempting to drive over the log in very close proximity to Wood and the
other bystanders, Loader and Ojeda placed these individuals in a
potentially dangerous situation.  But that is not the same as putting them
in a situation that would, as a matter of necessity, cause injury.  *In re Elias*,
302 B.R. at 910.

In summary, Wood has not shown that Loader acted willfully and
maliciously, such that the elements under § 523(a)(6) are not satisfied.

MEMORANDUM OF DECISION - 19

II.

Section 523(a)(9) of the Bankruptcy Code provides that an individual debtor may not discharge any debt "for death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance[.]"  11 U.S.C. § 523(a)(9). In a prior decision in Loader's bankruptcy case, the Court noted the similarity between this section and § 507(a)(10).  *See* Memorandum of Decision, Docket No. 45, Bankr. Case No. 08-00387-JDP.  Ultimately, in resolving the trustee's objection to Wood's claim, the Court held that Wood had satisfied the requirements for her claim to be entitled to priority under § 507(a)(10).  *Id.*  Despite the similarities in these two Code sections, the Court's holding regarding the trustee's claim objection is not dispositive in this discharge litigation.

For example, the chapter 7 trustee did not dispute Wood's assertion that it was Loader who actually shifted the truck into four-wheel drive and verbally encouraged Ojeda to drive over the log.  Moreover, the chapter 7

MEMORANDUM OF DECISION - 20

trustee conceded that Loader was intoxicated.  In contrast, in this

adversary proceeding, Loader sharply disputes that he shifted the vehicle

or encouraged Ojeda in any fashion.[11]  In addition, Loader challenges

whether Wood has conclusively shown that he was in fact intoxicated, as

defined by Idaho law.  All of these facts play a critical role in the analysis

under § 523(a)(9).

　　　　To prevail under § 523(a)(9), Wood must prove by a preponderance

of the evidence that (1) there is a debt for death or personal injury, (2) that

the death or personal injury was caused by debtor's operation of a motor

vehicle, and (3) that the operation of the motor vehicle was unlawful

--------

[11]  Loader did not object to the allowance of Wood's claim as a priority
claim under § 507(a)(10).  Loader did file a brief in advance of the hearing on the
chapter 7 trustee's objection to Wood's claim, *see* Docket No. 43, Bankr. Case No.
08-00387-JDP, and he did appear through counsel at the hearing.  However, as
explained at the hearing, his purpose in doing so was merely to ensure that any
failure to object to Wood's claim would not be construed as his acquiescence to
Wood's contentions in this dischargeability proceeding.  Wood's attorney noted
that there was some overlap between the issues involved in the trustee's
objection and this adversary proceeding, but acknowledged that the Court's
determination regarding priority of Wood's claim would not have preclusive
effect in this adversary proceeding.  Apparently comfortable with that response,
Loader's attorney excused himself from the hearing and offered no evidence or
legal argument.

MEMORANDUM OF DECISION - 21

because the debtor was intoxicated pursuant to state law.  *Huntley v. Vessey (In re Vessey)*, 03.4 I.B.C.R. 227, 228 (Bankr. D. Idaho 2003).  The first element, that Wood suffered an injury, is clearly satisfied.  In addition, at least arguably, by his conduct, Loader engaged in the "operation" of a motor vehicle.  However, the last element required to find the debt excepted from discharge under this provision requires further discussion.

In this Court's earlier decision regarding the priority of Wood's claim, it held that Loader's verbal encouragement to Ojeda, taken together with his physical act of shifting the vehicle into four-wheel drive manifested his intent to exercise some control over the vehicle, such that Loader "operated" the vehicle.  *See* Memorandum of Decision at p. 17, Docket No. 45, Bankr. Case No. 08-00387-JDP.   As a result, because the chapter 7 trustee had conceded that Loader was legally intoxicated, the Court concluded that Loader had violated Idaho Code § 18-8004(1)(a),[12]

---

[12]  Idaho Code § 18-8004(1)(a) provides:

It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or any combination of alcohol, drugs and/or any other intoxicating substances, or who has

MEMORANDUM OF DECISION - 22

and that elements for priority under § 507(a)(10) had been satisfied.  Here,

where Loader contests the level of his intoxication, further analysis is

needed.

Idaho Code § 18-8004 provides that:

[a]ny person who does not take a test to determine alcohol
concentration or whose test result is determined by the court
to be unreliable or inadmissible against him, may be
prosecuted for driving or being in actual physical control of a
motor vehicle while under the influence of alcohol, drugs or
any other intoxicating substances, *on other competent evidence.*

Idaho Code § 18-8004(2) (emphasis added).  The Idaho Court of Appeals

has explained:

While I.C. § 18-8004 establishes only one crime of driving
under the influence, it may be proved in either of two separate
and distinct ways.  It may be proved . . . by the direct and
circumstantial evidence of impairment of ability to drive due
to the influence of alcohol.  Alternatively, if chemical testing
was performed in accordance with the statute, the crime may
be proved by forensic evidence that the defendant's alcohol
concentration exceeded the statutory percentage.

---

an alcohol concentration of 0.08, as defined in subsection (4) of this
section, or more, as shown by analysis of his blood, urine, or breath,
to drive or be in actual physical control of a motor vehicle within
this state, whether upon a highway, street or bridge, or upon public
or private property open to the public.

MEMORANDUM OF DECISION - 23

*Idaho v. Andrus*, 800 P.2d 107, 109 (Idaho Ct. App. 1990).

Here, neither Loader nor Ojeda were subjected to any chemical testing to determine their blood alcohol content at the time of the accident. As a result, Wood must prove Loader was intoxicated for purposes of the Idaho statute by "evidence showing consumption of alcohol and some discernible impairment related to the motorist's ability to drive." *Idaho v. Bronnenberg*, 856 P.2d 104, 107 (Idaho Ct. App. 1993); *Andrus*, 800 P.2d 110-11 (holding that impairment must be "noticeable" or "perceptible," proven "by observations of some type of ascertainable conduct or effect," and relate to the ability to drive).

Only Loader and Browning testified in person at the trial in this proceeding. Both acknowledged that Loader had consumed alcohol on the day of the accident. Indeed, Loader acknowledged he asked Ojeda to drive because he had been drinking. However, neither witness testified that Loader was intoxicated. In addition, neither were asked whether Loader appeared impaired or intoxicated prior to the accident, and neither of them otherwise testified that he was.

MEMORANDUM OF DECISION - 24

The state court depositions of several others who were at the scene of the accident were also admitted into evidence.  In each of these depositions, the question was asked whether Loader had been drinking.  In each of the depositions, the answers revealed that he was.  However, again, nothing in the depositions show that Loader was noticeably or discernibly impaired.  Carlos Martinez, who shared the house with Scott Loader, testified that Loader and the rest of the group were loud and obnoxious, and actually described their behavior as "cowboy drunk almost."  *See* Ex. 13, at pp. 13-14.  However, neither of these conditions, nor the description as being "cowboy drunk" relate to Loader's ability to drive.

Frankly, the Court's sympathies lie with Wood.  But to satisfy her burden under § 523(a)(9), it was not enough that Wood show Loader had been drinking alcohol prior to the accident.  Instead, it was Wood's burden to prove, by a preponderance of the evidence, that Loader was unlawfully intoxicated.  Absent chemical test results to show Loader exceeded the statutory blood alcohol limits, Wood must show that Loader was

MEMORANDUM OF DECISION - 25

physically impaired.  While this is a close call, and although she has clearly

shown that Loader consumed several drinks on the day of the accident, the

evidence is insufficient to persuade the Court that, more probably than

not, Loader was discernibly impaired due to his alcoholic consumption.

In this regard, the facts of this case are similar to those in *In re Vessey*,

where this Court also found that the evidence failed to establish that the

debtor's ability to drive was impaired.  03.4 I.B.C.R. at 229.  While Loader's

actions were negligent, reckless, and pursued without just cause or excuse,

as in *In re Vessey*, the Court cannot say, based on the record before it, that

Loader's actions were *unlawful* because of his intoxication, as opposed to

resulting from a general lack of judgment.  *Id.*

Wood has not satisfied the burden of proof under § 523(a)(9).[13]

### *Conclusion*

For the foregoing reasons, the Court declines to conclude that

Loader's debt to Wood should be excepted from discharge in bankruptcy.

---

[13]  Because Wood failed to prove Loader was unlawfully intoxicated, the Court renders no final conclusion regarding whether Loader's conduct amounted to "operation" of the vehicle for purposes of § 523(a)(9).

MEMORANDUM OF DECISION - 26

A separate judgment shall be entered dismissing this action.

Dated:  September 28, 2009

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

*Appendix*



MEMORANDUM OF DECISION - 27